DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

### NOVEMBER TERM, 1879.

---

### J. ROBERT FOULKE v. THOMAS BOND.

1. In the acquisition of title by adverse possession, the distinction between strangers and tenants in common relates to the character of the evidence necessary to prove that the possession was adverse. If the parties are strangers in title, possession and the exercise of acts of ownership are in themselves, in the absence of explanatory evidence, proof of an ouster of the true owner; whereas, in cases of privity of title, such as subsists between tenants in common, the acts of possession of one tenant will, in the absence of satisfactory evidence to the contrary, be referred to the community of title, and there must be clearer and more decisive evidence of an ouster by one tenant in common of his associate, than is necessary to prove that a person having no right of possession had ousted an owner in severalty.

2. The presumption that the entry of one co-tenant is for the benefit of all, applies to a third person who acquires an undivided interest, under a conveyance to that effect, from one of the original co-tenants. But where one tenant in common conveys the whole estate to a stranger, entry by the grantee thereunder operates as a disseizin of the other co-tenants; and if the grantee, entering under such a conveyance, places his deed upon record, and continues in the exclusive possession of the premises for the period of twenty years, without any interference on the part of the other co-tenants, title to the whole estate may be acquired by adverse possession.

3. The general doctrine of the law is that fraud in obtaining or continu-

527

ing possession or knowledge that the party's claim of ownership is unfounded and wrongful, will not deprive him of his title by adverse possession, or relieve the true owner of the consequences of the bar of the statute of limitations, if the possession of the intruder has been in fact adverse, and has been asserted by such open and notorious acts of ownership as are essential to title by adverse possession.

4. The doctrine that fraud in obtaining or continuing possession will not prevent the operation of the statute of limitations, is not applied in all its strictness where a disseizin by virtue of an entry under color of title is claimed. A party cannot have the advantage of an entry, under color of title, unless his deed, which gives the colorable title, was obtained *bona fide.*

5. A grantee will not be deprived of the legal advantages of his entry, under color of title, unless it be for actual fraud on his part; he will not be prejudiced by the fraud of the grantor in making the title, unless he was personally a participant in the fraud; if his deed purports on the face to convey good title, and he has accepted it in good faith, he will be entitled to the benefits to be derived from an entry under color of title. Mere neglect to inquire into the state of the title is not sufficient evidence of fraud; nor does the rule, that what is sufficient to put a party on inquiry operates as notice, apply in such a case. There must be clear and satisfactory proof of knowledge that the title supposed to be acquired was invalid, accompanied by proof of an intent to defraud the real owner.

6. It may be regarded as settled in this state by long usage, sanctioned by a uniform course of practice, and supported by judicial decision, that mere entry on waste and uncultivated and unenclosed lands, under a survey, or a conveyance, or other claim of title, and occasional acts of trespass, extending over the period of twenty years, though coupled with the payment of taxes, are not such acts of possession as will deprive the true owner of his title. Such acts are evidence of an adverse claim of title, but do not amount to that actual, continued and uninterrupted possession which is essential to title by adverse possession.

7. In order to acquire title by adverse possession, the possession must be actual and exclusive, adverse and hostile, visible or notorious, continued and uninterrupted. Notoriety of the adverse claim under which possession is held, is a necessary constituent of title by adverse possession, and therefore the occupation or possession must be of that nature that the real owner is presumed to have known that there was a possession adverse to his title, under which it was intended to make title against him. The party relying on title derived from such a source must prove possession in himself, or in those under whom he claims, of such a character as is calculated to inform the true owner of the nature and purpose of the possession to which the lands are subjected.

Foulke v. Bond.

8. Actual occupancy by residence, cultivation, or enclosure, or the erection of permanent improvements, is not necessarily required. Acts of ownership done upon the land, which are of such a nature as to manifest a notorious claim of property, and are continued for the period of twenty years without interruption or interference by the true owner, may, under the circumstances and in the situation of the property, be sufficient evidence of an ouster, and of an adverse possession, to support a claim of title by adverse possession, without any residence, cultivation or enclosure.

9. When the nature and essential qualities of an adverse possession which shall give title are explained, the question becomes one of fact whether, under the circumstances of the particular case, the party relying on title derived from such a source has satisfactorily shown that his possession has been such as to meet the requirements of the law.

10. The principles on which title by adverse possession rests, apply in all cases in which title acquired by such means is relied on. As a legal proposition, it is impossible to make any discriminations founded on the situation, extent or quality of the lands in dispute. The varied circumstances under which the question may be presented in its relations to extensive tracts of wild and uncultivated lands, make the adoption of any legal formula impracticable, beyond the enunciation of the rule that the possession, to give title, must be hostile to the title of the real owner, and actual, exclusive, continued and uninterrupted for the full period of twenty years, with such notoriety in the adverse enjoyment as that the true owner is presumed to know that title by that means is being acquired against him ; whether in any case title has been acquired by length of possession, and to what extent, and within what limits, must be determined by the actual facts.

11. The fact that the disseisor is in under color of title will not dispense with the necessity of possession, which is actual, exclusive and notorious, as the foundation of his title by adverse possession.

12. Entry under color of title is evidence of the nature of the entry, and if the deed which gives the colorable title contains a description by metes and bounds, it is evidence of the extent of the claim of title, in virtue of which the entry is made. Color of title will also serve to give character to the possession of the disseisor, but whether there has been a substantial holding co-extensive with the boundaries in the deed, with sufficient notoriety to make a title under it corresponding with the description, must be decided, as a question of fact, from the nature and condition of the property and the acts of ownership exercised over it, having regard as well to their frequency as to their character, as open and notorious manifestations of the claim of title.

13. Color of title and actual occupation by residence, cultivation or enclosure of part of the tract, or by other conspicuous acts of owner-

ship, may serve to give character to the acts of possession over the residue, but will not relieve the disseisor from the obligation of satisfying a jury that his possession has been of such a character as, under the circumstances, may reasonably be expected to have informed the owner of the nature of the possession, and the extent of title proposed to be acquired under it.

14. The rule of law that possession by one having paper title will be presumed to be co-extensive with the boundaries of the title deeds, only applies to the owner of the legal title. There is no such presumption in favor of the disseisor, though he has a color of title; so far as concerns him, possession and its nature and extent are questions of fact, in the determination of which entry and possession, under color of title, has only the office and effect above mentioned.

On error to the Supreme Court.

The controversy in this case relates to the equal undivided one-half part of a tract of land in the county of Ocean. The premises in dispute are part of a tract of four hundred and twenty acres, situate in the counties of Ocean and Burlington, and called in the pleadings and evidence as lot number seventeen.

The tract of four hundred and twenty acres was once owned by Charles T. Lott and Joshua S. Earl as tenants in common. In 1876 the executors of Lott conveyed his undivided one-half part to the plaintiff.

Joshua S. Earl died in 1831. By his last will he devised his undivided interest to his brother, Franklin W. Earl.

Franklin W. Earl, August 15th, 1833, conveyed to William Ivins, by a deed describing the premises as "the equal undivided moiety or half part of a parcel of beach, situate on Long Beach, being a lot of four hundred and twenty acres, which was allotted to James Smith by the commissioners who divided Long Beach, and is number seventeen, bounded as follows: Beginning, &c., together with," &c.

After the death of Ivins, John D. Thompson, his administrator, by virtue of an order of sale made by the Orphans' Court of the county of Monmouth, for the payment of debts, made sale and conveyance of the four hundred and twenty

acres tract in two parcels—the one to Lloyd Jones, the other to Sarah Pharo. The deeds to Ivins and Pharo were dated September 1st, 1842.

Jones and wife, by a deed bearing date on the 13th of January, 1851, and recorded in the clerk's office of the county of Ocean, on the 5th day of March, 1851, conveyed to the defendant. The deed contained a full covenant of general warranty, and conveyed the lands in fee by a particular description of the premises.

Sarah Pharo also conveyed the premises she purchased at the Thompson sale, to the defendant, by a deed bearing date on the 31st of July, 1851, and recorded in the clerk's office of the county of Ocean, on the 23d of September, 1851. The deed contained a full covenant of general warranty, and conveyed the entire estate in the premises in fee by a particular description.

Ocean county was set off from the county of Monmouth in 1850.

This action of ejectment was commenced in July, 1877. The verdict was for the defendant, whereupon the plaintiff, after final judgment, sued out this writ of error.

For the plaintiff in error, *Fred. Voorhees* and *P. L. Voorhees.*

*First.* That the real estate in question is a tract of wild, uncultivated land or sand beach, without enclosure, and without any marked boundaries or lines; that said tract is now owned by the plaintiff on the one part, and by the defendant in this suit on the other part, and that the same has been so held in co-tenancy since the year 1851; and that the rules with regard to adverse possession, which govern between co-tenants, apply to the case. And further, that the defendant, Bond, had full notice and knowledge when he took his deed that he took thereby but the one undivided half part of the lands.

*Second.* That the deeds to Bond do not describe any definite or fixed lines upon the land; that the deeds, with the acts proven, were not such as to give constructive notice to Dr.

Lott that Bond was in possession, claiming to own the whole property involved in this suit.

*Third.* That the rule of law as charged by the court, viz., that the possession of a person who enters upon land under a deed, and exercises acts of ownership over it in different places, will be presumed to be co-extensive with the deed, and his adverse title, if found, will run according to the bounds of his deed, does not apply to wild, uncultivated lands, and is not the rule that governs in this case; that the charge of the court extending such adverse title to the bounds of two adjacent but separate tracts is not in accordance with the rule of law applicable to this case.

Cases cited: *Stiles* v. *White*, 12 *Metc.* 356; *Tappan* v. *Tappan*, 11 *Fost.* 41; *Henshaw* v. *Noble*, 7 *Ohio St.* 226; *Carver* v. *Jackson*, 4 *Peters* 1; *Jackson* v. *Woodruff*, 1 *Cow.* 276; *Jackson* v. *Richards*, 6 *Cow.* 617; *Sharp* v. *Brandon*, 15 *Wend.* 597; *Hoy* v. *Bramhall*, 4 *C. E. Green* 563; *Holmes* v. *Stout*, 2 *Stockt.* 419; *Van Doren* v. *Robinson*, 1 *C. E. Green* 256; *Ex'r* of *Kearney* v. *Kearney*, 2 *McCart.* 60; *Den* v. *Hunt*, *Spenc.* 487; *Angell on Limitations*, § 403; 4 *Kent's Com.* 179.

For the defendant in error, *John L. N. Stratton* and *B. Gummere.*

I. The defendant claims to have a valid title to the *locus in quo*, by virtue of his entry thereon under color and claim of title and adverse possession for twenty-six years thereafter. The evidence shows conclusively that he bought the land in good faith, and paid full value for it.

To constitute *color of title*, all that is necessary is that the vendee should be the apparent owner under a deed valid on its face, and *without fraud on his part*. *Den* v. *Hunt*, *Spenc.* 487, 493; *Clapp* v. *Bromagham*, 9 *Cow.* 530, 557–559; *Mc-Cagg* v. *Heacock*, 42 *Ill.* 157.

And although the *grantee have notice* that the title is questionable, or defective, yet he is not chargeable with fraud.

*Cornelius* v. *Giberson*, 1 *Dutcher* 1, 31; *McCagg* v. *Heacock*, *ubi supra ; Russell* v. *Mandell*, 73 *Ill.* 136, 137-8.

Nor have the rules of law respecting constructive notice, or the duty of inquiry, any bearing upon or application to the question of " color of title ;" only fraud clearly and positively proved can affect or destroy color of title. *Clapp* v. *Bromagham*, 9 *Cow.* 530, 558-9.

Nor can fraud *on the part of the grantor* in making the deed affect the grantee's color of title—*his* fraud *must be proved*, and will never be presumed. *Gregg* v. *Sayre*, 8 *Peters* 244, 253-4 ; *Angell on Limitations*, § 404.

II. The general rule is that a grantee of land under a deed giving color of title, and who is, for the term prescribed by the statute, in the actual possession of part of the land conveyed, will be held to be in constructive possession of the residue up to the boundaries set forth in his deed. *Angell on Limitations*, §§ 400, 401.

As modified in this state, actual occupancy of wild lands *by enclosure* is not required of a vendee claiming under color of title ; if he *actually occupies part,* and exercises such use of the rest as is consistent with the character of the land, his possession is complete—he is not held to the *possessionem pedis*. *Den* v. *Hunt, Spenc.* 487, 492.

The defendant has shown, in the fullest manner, his possession of the *locus in quo* far more fully and continuously than the law requires.

Thus far, then, the defendant is shown to have a valid title to the *locus in quo*, by open, notorious, continuous and adverse possession of the whole of the land, under color and claim of title.

But it is alleged, on the part of the plaintiff, that the evidence proves that during all the term of the defendant's possession he was tenant in common with the plaintiff, and those under whom he claims, of the *locus in quo*, and that his possession could not be adverse until after actual notice to his co-tenant of his intention to hold in severalty.

III. The defendant *never entered* upon *nor possessed* the *locus in quo as tenant in common*; his entry and possession were *under conveyances of the entirety,* accepted and paid for in good faith, and *as a stranger* to plaintiff; *he entered as owner* of and *claiming title to the whole,* and *so held,* notoriously and openly, for twenty-six years, during which time he never admitted any co-tenancy, nor was any such claim made upon him, nor the existence of any title in common ever known to or disclosed to him; *his entry* is defined by his deeds, and there is *no pretence* that its character, and that of his possession, so defined by his deeds, was ever changed by any act or admission on his part.

He entered, it is true, under what was then in fact a defective title, but as a stranger to plaintiff's title, and in good faith, he claimed title and right of possession to and in the entirety; he, under that claim, openly and notoriously made, continued in adverse possession of the whole until his defective title ripened into a perfect title under the statute of limitations. He never was a co-tenant of the plaintiff. An *unconscious* tenant in common is unknown to the law, if such unconsciousness continue for more than twenty years. Through the plaintiff's laches, the time has passed for stamping his avowed sole title with the impress of co-tenancy.

*As a stranger,* he took entire title from *those who again were apparently strangers* to plaintiff's title, and *holding an apparently entire title* to the *locus in quo.* There is no proof that *his grantors,* Jones and Pharo, ever entered as, or admitted themselves to be, tenants in common with plaintiff; *the presumption is* that they also entered and held *according to their deeds,* as sole owners, and the *locus in quo* has been held adversely since 1842.

*If they were* tenants in common with plaintiff, they openly and notoriously ousted and actually disseized him by *conveying the whole* of the premises to the defendant, with full covenants of seizin, and by *delivering full seizin of the whole* to him under said deeds.

The preponderance of authority in support of this position.

is overwhelming.  *Bradstreet* v. *Huntington*, 5 *Peters* 402, 445; *Clymer* v. *Dawkins*, 3 *How.* 689; *Prescott* v. *Nevers*, 4 *Mason C. C.* 330; *Bogardus* v. *Trinity*, 4 *Paige* 178, 199, &c.; *Jackson* v. *Smith*, 13 *Johns.* 406; *Wright* v. *Sadler*, 20 *N. Y.* 329; *Clapp* v. *Bromaghem*, 9 *Cow.* 530; *Higbee* v. *Rice*, 5 *Mass.* 344, 352; *Bigelow* v. *Jones*, 10 *Pick.* 162; *Parker* v. *Proprietors*, 3 *Metc.* 101; *Marcy* v. *Marcy*, 6 *Metc.* 371; *Killredge* v. *Locks*, 17 *Pick.* 247; *Clark* v. *Vaughan*, 3 *Conn.* 191; *Hodges* v. *Eddy*, 38 *Vt.* 327; *Forest* v. *Jackson*, 56 *N. H.* 357; *Thomas* v. *Pickering*, 13 *Me.* 337; *Culler* v. *Motzer*, 13 *Serg. & R.* 358; *Law* v. *Patterson*, 1 *Watts & Serg.* 191; *Dikeman* v. *Parrish*, 6 *Penna. St.* 225; *Weisinger* v. *Murphy*, 2 *Head.* 679; *Alexander* v. *Kennedy*, 19 *Tex.* 496; *Horne* v. *Howell*, 46 *Ga.* 9; *Cain* v. *Furlow*, 47 *Ga.* 674; *Gill* v. *Fauntleroy*, 8 *B. Mon.* 186; *Long* v. *Stapp*, 49 *Mo.* 508; *Nelson* v. *Davis*, 35 *Ind.* 483; *Doe* v. *Taylor*, 5 *B. & Ad.* 575; *Davenport* v. *Tyrrel*, 1 *Blackst. R.* 675; *Obert* v. *Bordone*, *Spenc.* 394, 400.

There is no adverse authority in the United States, excepting 32 *Cal.* 481, that I have found, and in that case the bareness of the ruling, and the apparent ignorance of the adverse authorities, are equally remarkable.

There are a few cases which hold that if a tenant in common conveys *his interest* in the land, and *not specifically the fee of the whole land*, the presumption is that the grantee takes and enters as tenant in common, because the grantor neither asserts a right to, nor assumes to convey, the whole in severalty; but these are indirect supporters of the cases cited above. *Roberts* v. *Morgan*, 30 *Vt.* 324; *Edwards* v. *Bishop*, 4 *N. Y.* 64; *Lefavour* v. *Homan*, 3 *Allen* 356; *Purcell* v. *Wilson*, 4 *Gratt.* 21.

Even these cases seem to be evasions of the great statute of repose.  If the grantee entered *bona fide* under such color of title, claiming title to the whole, and holding the whole for more than twenty years, without actual knowledge or notice of counter claim, why is he not within the statute?

IV. As defendant *never consciously accepted a tenancy in common* with plaintiff, but, on the contrary, *accepted a purely several estate* in the land, and as he *never entered* in common interest with the plaintiff, but as sole tenant in fee, and under conveyance and seizin from parties claiming to hold in fee, the plaintiff cannot claim from him any of the peculiar duties which a tenant in common owes to his co-tenant. The defendant entered openly and notoriously *as a stranger*, put *his deed upon the official record*, and *asserted and exercised his ownership in severalty for twenty-six continuous years;* these acts constituted all the notice that the law required of him. *Hodges* v. *Eddy*, 38 *Vt.* 327, 345; *Forest* v. *Jackson*, 56 *N. H.* 357, 362; *Washb. on Real Prop.* \*498.

At each *new entry* upon the lands, the plaintiff was bound to take notice thereof within twenty years, and ascertain whether the new comer entered in common with him, or adversely to him. He could not assume that each new entry was made in common, but is put to at least the diligence of inquiring as to the character of the entry; otherwise, he might lie quiet for *an hundred years*, and impose on a dozen mesne grantees entering, claiming and holding in severalty, all the duties and liabilities of tenants in common. No such doctrine was ever advanced. The duty of actual notice has never been imposed on any save him *who entered* as tenant in common, or as tenant for years, and *subsequently* sets up a title in severalty, or title paramount to that of his landholder, and claims to hold under such new and adverse title. It is such new and changed tenure which the law requires to be notified to him who has been lulled to rest by the admissions of the original entry and the holding thereunder. *Lawson* v. *Cunningham*, 21 *Ga.* 459.

V. Even if chargeable with the duties of a tenant in common, it is submitted that the open and notorious acts of sole dominion and exclusive ownership on the part of the defendant are sufficient notice of his claim of title, and are acts of ouster of the plaintiff; and having been continued more than

twenty years, the defendant's sole title, by adverse possession, is complete. *Warfield* v. *Lindell*, 30 *Mo.* 282; *Lapeyre* v. *Paul*, 47 *Mo.* 590; *Lodge* v. *Patterson*, 3 *Watts* 77; *Mehaffy* v. *Dobbs*, 9 *Watts* 363; *Law* v. *Patterson*, 1 *Watts & Serg.* 191; *Bolton* v. *Hamilton*, 2 *Watts & Serg.* 294; *Keyser* v. *Evans*, 30 *Penna. St.* 509; *Valentine* v. *Northrop*, 12 *Wend.* 495; *Carpenter* v. *Thayer*, 15 *Vt.* 556; *Lefavour* v. *Homan*, 3 *Allen* 355; *Thomas* v. *Garvan*, 4 *Dev.* 223; *Cloud* v. *Webb*, 4 *Dev.* 290; *Hubbard* v. *Wood*, 1 *Sneed* 279; *Izard* v. *Bodine*, 3 *Stockt.* 403; *Alexander* v. *Kennedy*, 19 *Tex.* 492; *Doe* v. *Prosser*, *Cowp.* 217; *Peaceable* v. *Read*, 1 *East* 568; *Brackett* v. *Norcross*, 1 *Greenl.* 89.

The opinion of the court was delivered by

DEPUE, J.   At the trial, sixteen requests to charge were submitted by the plaintiff in error.   Exceptions were taken to the refusal to charge in compliance with such requests, and three exceptions were taken specially to the charge as delivered.   It will not be necessary to examine the exceptions in detail.   They can be disposed of by considering a few propositions, which will embrace all the questions put on the record by the bill of exceptions.

The parties were in fact tenants in common.   The defendant entered under deeds of conveyance for the entire estate in fee, containing full covenants of warranty.   He purchased the entire estate of his grantors in good faith and for a full consideration, and his deeds were promptly put on record. The judge instructed the jury that in the absence of evidence of bad faith or fraud, the defendant must be considered as a stranger to the plaintiff's title, and that the strict rule with regard to adverse possession, which governs between tenants in common, did not apply in this case.

Possession of the joint estate by one tenant in common is presumed to be the possession of all.   But, nevertheless, one tenant in common may acquire title to the joint estate in entirety by adverse possession.   In the acquisition of title by adverse possession the distinction between strangers and tenants in

common relates to the character of the evidence necessary to prove that the possession was adverse. The relations between the joint owners are presumed to be amicable rather than hostile, and the acts of one affecting the common property are presumed to be done for the common benefit. *Freeman on Co-tenancy,* § 166. This presumption is liable to be overcome by the circumstances of the particular case. It is a rule of evidence merely, which enters into the question whether the possession is in fact adverse, and not a rule of law which forbids the application of the statute of limitations to persons who occupy to each other the relation of tenants in common.

It is with respect to those two essential qualities of the possession, on which title by lapse of time is founded—hostility in fact to the title of the true owner and notoriety of the adverse claim—that the fact of a co-tenency between the parties becomes an important element. If the parties are strangers in title, possession and the exercise of rights of ownership are in themselves, in the absence of explanatory evidence, proof of an ouster of the true owner; whereas, in cases of privity of title such as subsists between tenants in common, the acts of possession of one tenant will, in the absence of satisfactory evidence to the contrary, be referred to the community of title, and there must be clearer and more decisive evidence of an ouster by one tenant in common of his associate than is necessary to prove that a person having no right to possession had ousted an owner in severalty. *Doe* v. *Taylor,* 5 *B. & Ad.* 575; *Prescott* v. *Nevers,* 4 *Mason* 330; *Freeman on Co-tenancy,* § 221. An ouster by a tenant in common does not differ in its nature from any other ouster, in any respect, except in the degree of evidence required; in other cases the assumption of ownership is more clearly adverse; in case of a tenant in common such assumption of ownership, and the acts which indicate it, may be consistent with an acknowledgment of the rights of the co-tenant, and therefore acts which are decisive in the one case are equivocal and insufficient in the other. *Newell* v. *Woodruff,* 30 *Conn.* 492.

The difference in the rules of law applicable to title by ad-

verse possession as between strangers and as between those who are in privity of title, such as subsists between a tenant and his landlord and between the co-tenants of a joint estate, is founded on the distinction between an entry which is hostile in its inception and one which becomes so by subsequent acts. In this respect the fact that the defendant entered into possession under a conveyance of the whole estate, distinguishes the present case from an ordinary case between tenants in common. The presumption that the entry of one co-tenant is for the benefit of all, applies to a third person who acquires an undivided interest under a conveyance to that effect from one of the original co-tenants. He has title to an undivided interest and his entry is presumed to have been in accordance with his title. But where the grantee has obtained a conveyance of the whole estate by one of the co-tenants, entry made under such a title is a disseizin of the other co-tenants. Where one of two coparceners enters and makes a feoffment in fee of the whole manor, this feoffment is not only of the moiety whereof she might lawfully make a feoffment, but also of the other moiety by disseizin. *Townsend* v. *Pastor*, 4 *Leon.* 52. When one coparcener entereth into the whole and maketh a feoffment of the whole, this divesteth the freehold in law out of the other coparcener. *Co. Litt.* 374, *a.* A feoffment by one of several coparceners who is alone in possession, made to a stranger for the whole premises, will oust the other coparceners. *Doe* v. *Taylor*, 5 *B. & Ad.* 575. In *Gerry* v. *Holford*, *Cro. Eliz.* 615, the special verdict found that there were two copartners of a house; the one entered generally and made a lease for life by the name of "all that his house, &c.," and the question was whether all or a moiety only of the house passed. Popham and Fenner, Justices, (Gawdy, Justice, *contra*,) held that the entire house passed, "for when he said, 'all that my house, &c.,' he intended the whole house; and by his livery made, he gained the entire, and gave the entire; although by his general entry, it is not intended that he entered into more than to what he had a right."

The common law gave to a feoffment or demise with livery

of seizin of the whole estate by one co-tenant the effect of a disseizin of the other co-tenants, because of the notoriety of the act of investiture by livery of seizin.    Immediately upon the feoffment, the estate became the property of the feoffee as between him and the feoffor and every other person except the rightful owner, and a long and uninterrupted possession of a certain duration made the title good even against the rightful owner, and to prevent this he must have restored his own seizin.    *Co. Litt.* 330, *b*, *n*. 1.    Upon principle the same effect must be given to a conveyance by deed of bargain and sale under our statute where the deed has been placed on record under our recording acts.    By the seventh section of the act of March 17th, 1714, (*Rev.*, *p.* 165,) the grantee under a conveyance by deed of bargain and sale is deemed, taken and esteemed to be in as full and ample possession to all intents, construction and purposes as if he was possessed thereof by solemn livery of seizin and possession ; and the policy of the recording acts substitutes the constructive notice arising from the publicity of the record in the place of the notoriety of investiture by livery of seizin at common law.

Entry by a grantee holding under a deed of conveyance for the entire estate, made by one of the co-tenants and duly placed on record, has all the constituent elements of a disseizin at common law.    The conveyance by one tenant of the estate in entirety is decisive of his purpose to appropriate the entire estate to his own use, especially if his deed contain full covenants of seizin and warranty.    The entry of the grantee under such a conveyance is equally evincive of his intention to claim the whole to the exclusion of the other co tenants, and if the deed be duly recorded the transaction acquires that notoriety which is equivalent to the notoriety of livery of seizin.    The disseizin thereupon becomes complete, and if possession be held continuously thereafter for the period of twenty years by open and notorious acts of ownership, without any interference on the part of the other co-tenants, title to the whole estate may be acquired by adverse possession.    *Prescott* v. *Nevers*, 4 *Mason* 326 ; *Bigelow* v. *Jones*, 10 *Pick.* 161 ;

*Kitterage* v. *Lock and Canal Co.*, 17 *Pick.* 246; *Parker* v. *Proprietors*, 3 *Metc.* 91; *Marcy* v. *Marcy*, 6 *Metc.* 360; *Jackson* v. *Brink*, 5 *Cow.* 483; *Clapp* v. *Bromagham*, 9 *Cow.* 531; *Bradstreet* v. *Huntingdon*, 5 *Peters* 402; *Freeman on Cotenancy*, §§ 224, 225. It is upon this principle that entry by one tenant in common on the part assigned to him in severalty by a partition which is invalid, and possession of that part under such a claim of title for twenty years, perfects his title thereto as against his co-tenants. *Clymer's Lessee* v. *Dawkins*, 3 *How.* 674; *Den* v. *Kelty*, 1 *Harr.* 517.

The plaintiff in error contends that the defendant having entered with notice of the actual state of the title, is disqualified from setting up that his entry was adverse to the other co-tenants.

The general doctrine of the law is that fraud in obtaining or continuing possession or knowledge that the party's claim of ownership is unfounded and wrongful, will not deprive him of his title by adverse possession, or relieve the true owner of the consequences of the bar of the statute of limitations, if the possession of the intruder has in fact been adverse and has been asserted by such open and notorious acts of ownership as are essential in the acquisition of title by adverse possession. *Humbert* v. *Trinity Church*, 24 *Wend.* 587. The common law generally regards disseizin as an act of force, and always as a tortious act. *Bradstreet* v. *Huntington*, 5 *Peters* 402. Disseizin "ever implyeth a wrong." *Co. Litt.* 153, *b.* Possession obtained by a misrepresentation of the nature of the estate under which entry is made being a manifest act of injustice and falsehood, is looked upon as an acquisition of the same nature as a possession gained by open and avowed violence, and so is a disseizin. 3 *Bac. Abr.* 151. The statute of limitations establishes a peremptory and inflexible rule of law which terminates the rights of the legal owner and protects the disseisor in his possession, not out of regard to the merits of the latter's title, but for the reason that the real owner has acquiesced in a possession which was adverse for such a length of time that the statute has deprived him of

all remedy for the enforcement of his legal title. Possession clandestinely taken and held for the purpose of fraudulently concealing from the real owner, knowledge of the acts of ownership over his property in virtue of which title is endeavored to be obtained, will defeat the effort to acquire title by such means not on any general doctrine of fraud, but for the reason that possession under such circumstances would be devoid of that notoriety of the possession, and of the adverse claim which is necessary to perfect title by adverse possession. The statute makes lapse of time a positive and legal bar in all cases within its provisions. *Thorpe* v. *Corwin*, *Spenc.* 319. This is the doctrine of the law in all cases where the adverse possession commences with an actual disseizin.

But a disseizin may be effected by an entry under a deed or a feoffment, which is void in the sense that no title is actually conveyed thereby, and where a party claims a disseizin by virtue of an entry under such a muniment of title, he is claiming the advantage of color of title. In such a case the rule above mentioned is not applied in all its strictness. A party cannot have the advantage of an entry under color of title unless his deed, which gives the colorable title, was obtained *bona fide.* If obtained by fraud or with knowledge that the grantor had no title to convey, the deed will avail the grantee nothing. *Den* v. *Hunt, Spenc.* 487. But a grantee will not be deprived of the legal advantages of an entry under color of title, unless it be for actual fraud on his part. He will not be prejudiced even though the grantor be justly chargeable with fraud in making the conveyance, unless he personally participated in the fraud. If his deed purports on its face to convey good title and he has accepted it in good faith, he is entitled to the benefits to be derived from an entry under color of title. *Gregg* v. *Sayre,* 8 *Peters* 244. The proof was full and complete that the defendant purchased and entered into possession on the supposition that he acquired the entire estate by his purchase. There was no ground even for a suspicion of fraud on his part.

It is contended, on the part of the plaintiff, that the de-

fendant had constructive notice of the imperfection in his title, on the principle that a party is legally chargeable with knowledge of the contents of the deeds in his chain of title, and therefore was not a purchaser *bona fide*. But the doctrine of constructive notice does not apply in such a case, There must be proof of actual fraud. Mere neglect to inquire into the state of the title is not sufficient evidence of fraud; nor does the rule that what is sufficient to put a party on inquiry operates as notice, apply in such a case; there must be clear and satisfactory proof of knowledge that the title supposed to be acquired was invalid, accompanied by proof of an intent to defraud the real owner. *Clapp* v. *Bromagham*, 9 *Cow*. 531. If the law were otherwise, under the system of recording adopted in this country, a disseizin of one tenant in common by a conveyance of the entire estate by his co-tenant, would be quite impossible. The question of fraud was properly left to the jury, and properly found by them on sufficient evidence.

The judge refused the plaintiff's request to charge that the lands being unenclosed wild lands, the defendant could not acquire title by adverse possession to any part of the *locus in quo*, except only such portion as he had actually held enclosed for twenty years. This refusal gave rise to one of the exceptions on the record, as did also his instruction that " the rule of law is that when a man enters into possession of land under a deed, and exercises acts of ownership in different places over the tract, his possession will be presumed to be co-extensive with the boundaries of his deed, and his adverse title, if proved, will run according to those boundaries."

There is, undoubtedly, a distinction between the possession of a mere intruder without pretence of title, and possession by a person who has entered under a colorable, and, of course, defective title. We have seen that entry under color of title confers an advantage in that it operates, under some circumstances, as a disseizin, and determines the *quo animo* with which the entry was made. Having color of title is also advantageous to the disseisor in giving character to his possession after entry made. The effect of color of title in its

relations to the possession of the disseisor, is a question of great importance where the dispute concerns the title to extensive tracts of wild and uncultivated lands.

It may be regarded as settled in this state by long usage, sanctioned by a uniform course of practice and supported by judicial decision, that mere entry on waste and uncultivated and unenclosed lands under a survey, or a conveyance or other claim of title, and occasional acts of trespass extending over the period of twenty years, though coupled with the payment of taxes, are not such acts of possession as will deprive the true owner of his title.    Such acts are evidence of an adverse claim of title, but they do not amount to that actual, continued and uninterrupted possession which is essential to title by adverse possession, for the reason that they do not amount to such twenty years' notice of an adverse possession as is intended by the statute.    4 *Griff. Ann. Reg.* 1269 ; *Cornelius* v. *Giberson,* 1 *Dutcher* 1.    In *Den* v. *Hunt, Spenc.* 487, it was held that actual occupancy by residence, cultivation or enclosure of the whole tract is not required, where the party is in possession under color of title ; and that possession of part of the tract included within the boundaries of the paper title by enclosure or cultivation, and the exercise of acts of ownership over the residue, such as was usual with owners of lands' of that particular description, or as amounted to actual possession, and such as fairly indicated an intention to assert the ownership and possession of the whole, was sufficient evidence of an adverse possession, co-extensive with the boundaries contained in the title deeds to support a verdict to that effect.    That case was before the court on a verdict, and was considered upon the weight and effect of the evidence ; and the proof, as was remarked by Green, Chief Justice, in Cornelius *v.* Giberson, was of an actual occupancy during the whole period of part of the tract, and the possession was visible and accompanied by notorious acts of ownership over the entire tract, and was actual and uninterrupted.    The case was one in which the acts of ownership over the whole tract were of such a character as to amount to actual possession.

Foulke v. Bond.

The principles on which the doctrine of title by adverse possession rests, are well settled. The possession must be actual and exclusive—adverse and hostile—visible or notorious—continued and uninterrupted. Notoriety of the adverse claim under which possession is held, is a necessary constituent of title by adverse possession, and therefore the occupation or possession must be of that nature that the real owner is presumed to have known that there was a possession adverse to his title, under which it was intended to make title against him. *Cornelius* v. *Giberson*, 1 *Dutcher* 1; *Cobb* v. *Davenport*, 3 *Vroom* 369–386; *Proprietors* v. *Springer*, 4 *Mass.* 416. A party relying on title derived from such a source must prove possession in himself or in those under whom he claims, of such a character as is calculated to inform the true owner of the nature and purpose of the possession to which the lands are subjected. The question whether possession has been held adversely continuously for the period of twenty years, with the requisite notoriety, is one of fact for the jury. Ordinarily, it is said that as a matter of evidence, possession, which is open and visible, is required. But, nevertheless, actual occupancy by residence, cultivation or enclosure, or the erection of permanent improvements, is not necessarily required. Acts of ownership done upon the land which are of such a nature as to manifest a notorious claim of property and are continued for the period of twenty years, without interruption or interference by the true owner, may, under the circumstances and in the situation of the property, be sufficient evidence of an ouster and of an adverse possession to support a claim of title by adverse possession, without any residence, cultivation or enclosure. *Ewing* v. *Burnet*, 11 *Peters* 41. When the nature and essential qualities of an adverse possession, which shall give title, are explained, the question becomes one of fact, whether, under the circumstances of the particular case, the party relying on title derived from such a source, has satisfactorily shown that his possession has been such as to meet the requirements of the law.

The principles on which title by adverse possession rests,

apply in all cases in which title acquired by such means is relied on. As a legal proposition, it is impossible to make any discriminations founded on the situation, extent or quality of the lands in dispute. Shall the legal rule be admitted with respect to woodlands, which are susceptible of outward manifestations of ownership by acts of cutting, and be rejected in cases of marsh lands and sandy wastes, incapable of profitable use until some improvement be made, over which the disseisor has exercised dominion by acts which unequivocally manifested his claim of title? Shall it apply only to lands in one compact body, or extend to detached parcels lying in close proximity. If so, what degree of separation shall determine —shall it be measured by feet, yards, miles, or fractions of a mile? If• the extent of acreage is adopted as the standard of measurement, what quantity of acreage shall decide; shall it be ten, twenty, fifty, or one hundred, or some multiple of those numbers—if so, what multiple? So also with regard to the character of the possession which shall be adverse. Shall occupation by residence, cultivation or enclosure of a part be required? If so, what proportion shall the part cultivated or enclosed bear to the whole tract? Suppose a tract of woodland, profitable only for coaling purposes, openly cut over year after year, or an unenclosed space, adapted for docks and wharves, habitually used for such purposes, could any rational doubt be entertained of the nature of the possession or the character of the acts of ownership exercised over the premises by the disseisor? Would any one venture the suggestion that such a possession was not a possession such as would be regarded as an adverse possession within the meaning of the law, without residence, or cultivation, or enclosure of an adjacent parcel of the same tract? Occasional acts of trespass, extending over the period of twenty years, will not give title; but who shall define with what frequency they shall be repeated to amount to that continuity of possession which is an essential ingredient of title by adverse possession? The varied circumstances under which the question may be presented in its relations to extensive tracts of wild and unculti-

vated lands, make the adoption of any legal formula impracticable beyond the enunciation of the rule that possession, to give title, must be hostile to the title of the real owner, and actual, exclusive, continued and uninterrupted for the full period of twenty years, with such notoriety in the adverse enjoyment as that the true owner is presumed to know that title by that means is being acquired against him. Whether in any case title has been acquired by length of possession, and to what extent, and within what limits, must be determined by the actual facts.

The fact that the disseisor is in under color of title will not dispense with the necessity of possession which is actual, exclusive and notorious as the foundation of his title by adverse possession. Entry under color of title is evidence of the nature of the entry, and if the deed which gives the colorable title contains a description by metes and bounds, it is evidence of the extent of the claim of title, in virtue of which the entry is made. Color of title will also serve to give character to the possession of the disseisor. But whether there has been a substantial holding co-extensive with the boundaries in the deed, with sufficient notoriety to make title under it corresponding with the description, must be decided as a question of fact, from the nature and condition of the property, and the acts of ownership exercised over it, having regard to their frequency as well as to their character as open and notorious manifestations of the claim of title. Possession as a presumption of law, is intended only in favor of the true owner. Every presumption is in favor of possession in subordination to his title. Color of title and actual occupation by residence, cultivation or enclosure of part of the tract, or by other conspicuous acts of ownership by the disseisor, may serve to give character to his acts of possession over the residue, but will not relieve him from the obligation of satisfying a jury that his possession has been of such a character as, under the circumstances, may reasonably be expected to have informed the true owner of the nature of the possession and the extent of the title proposed to be acquired under it. "I do not think," says Whitehead,

Justice, in Den *v.* Hunt, " that a person claiming a right to land by virtue of his adverse possession under color of title, should be restricted to so much only as he, or those under whom he claims, have had in actual occupancy by substantial enclosures or under cultivation, provided he has, for the requisite period of time, exercised such acts of ownership over the other parts of the land as are calculated to assert to the world a claim of right or as will amount to actual possession."

In a recent case before the House of Lords, the plaintiffs claimed title to the foreshore lying between the high and low water mark of the Clyde, a tidal, navigable river, in front of their uplands. The foreshore contained seven hundred and fifty acres, and extended about five miles along one side of the river and about two miles along the other, and was entirely unenclosed. The titles for the baronies contained no express grant of the foreshore, and did not specify the boundaries either of the baronies or of the component parts thereof. The plaintiffs founded their claim of title on the ground that, coupled with their title, they had exercised, from time immemorial, acts of possession over the foreshore. The acts of possession relied on were the pasturing of cattle on the sea greens, the regular cutting of reeds and sea weeds, taking sand and stones for building purposes, and generally using and permitting to be used, the lands in controversy for all the purposes for which land of that description could be used. It was held that such acts of possession for the prescriptive period, gave a right of property in the foreshore. In delivering his judgment, Lord Blackburn uses this language with respect to the effect of acts of possession as evidence of an adverse holding, where the controversy involves the title to an unenclosed tract of considerable dimensions: " Every act shown to have been done on any part of that tract by the barons or their agents, which was not lawful unless the barons were owners of the spot on which it was done, is evidence that they were in possession as owners of that spot on which it was done; no one such act is conclusive, and the weight of each act as evidence depends on the circumstances; one very important circum-

stance as to the weight being, whether the act was such and so done that those who were interested in disputing the ownership would be aware of it; and all that tends to prove possession as owners of parts of the tract tends to prove ownership of the whole tract; provided there is such a common character of locality as would raise a reasonable inference that if the barons possessed one part as owners they possessed the whole, the weight depending on the nature of the tract, what kind of possession could be had of it, and what the kind of possession proved was." *Lord Advocate* v. *Lord Blantyre*, 4 *App. Cas.* 770, 791. In an earlier case, Baron Parke, speaking also of the probative force of acts of possession as evidence of an adverse holding of an unenclosed tract of land, uses this language: "Ownership may be proved by proof of possession, and that can be shown only by acts of enjoyment of the land itself; but it is impossible, in the nature of things, to confine the evidence to the very precise spot on which the alleged trespass may have been committed; evidence may be given of acts done on other parts, provided there is such a common character of locality between those parts and the spot in question as would raise a reasonable inference in the minds of the jury, that the place in dispute belonged to the plaintiff if the other parts did; in ordinary cases to prove his title to a close, the claimant may give in evidence acts of ownership in any part of the same enclosure; for the ownership of one part causes a reasonable inference that the other belongs to the same person; though it by no means follows as a necessary consequence, for different persons may have balks of land in the same enclosure; but this is a fact to be submitted to the jury : so I apprehend the same rule is applicable to a wood which is not enclosed by any fence; if you prove the cutting of timber in one part, I take that to be evidence to go to the jury to prove a right in the whole wood, although there be no fence or distinct boundary surrounding the whole." *Jones* v. *Williams*, 2 *M. & W.* 331. Of like import is the language used by Lord Denman in *Doe* v. *Kemp*, 2 *Bing. N. Cas.* 102 ; and by Bayley, Justice, in *Tyrwhitt* v. *Wynne*, 2 *B. & Ald.*

554. *Stanley* v. *White*, 14 *East* 332, is an analogous case. In each of these cases the land in question was unenclosed and uncultivated, and in Tyrwhitt *v.* Wynne, the tract in dispute consisted of one thousand acres of unenclosed mountain land. In each of these cases acts of ownership in places upon the tract, were considered as competent evidence of possession of the whole, where there was a unity of character in the location. If competent evidence of possession, such acts of possession must necessarily be sufficient to maintain title by adverse possession without occupation by residence, cultivation or enclosure, provided they be continued for the full period of twenty years, with such notoriety as that the true owner may reasonably be expected to have had notice of the nature and extent of the title being acquired thereunder.

The judge properly denied the request to charge that the defendant's title by adverse possession must be limited to such parts of the premises as he had actually held enclosed for the prescriptive period. The observation of the judge with respect to the legal proposition that upon an entry under a deed, and the exercise of acts of ownership in different places over the tract, possession will be presumed co-extensive with the boundaries of the deed, was erroneous as applied to title by adverse possession. The rule of law that possession by one having paper title will be presumed to be co-extensive with the boundaries of the title deeds, applies only to the owner of the legal title. There is no such presumption in favor of the disseisor, though he has a color of title. So far as concerns him, possession and its nature and extent are questions of fact, in the determination of which entry and possession under a colorable title has only the office and effect above indicated. *Den* v. *Hunt, supra.* But when taken in connection with other parts of the charge, and as applied to the undisputed facts and the real subject matter in controversy between the parties, the error is not one for reversal.

The defendant purchased in 1851. When the purchase was made there was upon the Jones parcel a boarding-house capable of accommodating one hundred guests, and on the

Foulke v. Bond.

Pharo lot a dwelling-house. · The whole tract is in one con-
nected body.   It consists of beach lands, sedge meadows and
ridges of sand, with intervals of meadow and pasture land,
and patches of land capable of cultivation, and ocean front,
over which the tide flows.   The defendant entered immedi-
ately after his purchase.   He enlarged the boarding-house,
more than doubling its capacity, made an addition to the
dwelling-house, built docks, erected and removed buildings,
enclosed gardens, constructed roads and bridges, pastured and
cut hay on the meadows, enclosed and cultivated parcels of
the lands which were arable, and paid taxes on the whole
tract.   The evidence fully justifies the remark of the judge
that the defendant exercised all the customary acts of owner-
ship over the property, and his possession was uninterrupted
after he took possession in 1851.   During all that time he
claimed to be sole and exclusive owner.   He never recognized
in any way the ownership of the plaintiff or his grantors, and
they made no claim upon him for any part of the premises
until this suit was brought.

The defendant, as the owner of a legal title to an undivided
interest, was presumptively in possession of this whole tract,
and the only issue capable of contention was whether his pos-
session was in exclusion or in subordination to the title of his
co-tenant, and that question was correctly left to the jury.

There is no error apparent on the record, and the judgment
should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DAL-
RIMPLE, DEPUE, DIXON, KNAPP, REED, WOODHULL, DODD,
GREEN, LILLY, WALES—12.

*For reversal*—None.