**UNITED STATES v. 13,255.53 ACRES OF LAND IN BURLINGTON AND OCEAN COUNTIES, N. J., et al. (Parcels 67 and 111).**

No. M–135a.

District Court, D. New Jersey.

Nov. 8, 1943.

Sidney Kaplan, of Camden, N. J., for the United States.

Stanley K. Heilbron, of Mount Holly, N. J., for William Grant and Charles H. Atkinson, petitioners.

Harry G. Lenzner, of Trenton, N. J., for Gertrude Brown, Lloyd Davis, Stanley Davis, Leon A. Davis, Elvin H. Davis, Myrtle Haines, Viola Townsend, Gladys Billetdoux, and Marion Thoburn, claimants.

---

306

FORMAN, District Judge.

This controversy involves the ownership of a tract of land, consisting of about ten acres described as parcels 67 and 111, situated in the Township of New Hanover, County of Burlington, State of New Jersey, which was taken and condemned for the use of the United States of America in a condemnation proceeding. An award of $1,100 for the land designated as parcel 67, and $14,150 for the land designated as parcel 111, was made upon which judgment was entered and the money deposited with the court. An order was issued to show cause why it should not be determined that the petitioners, William Grant and Charles H. Atkinson, hold good and valid title to the land and are entitled to the money deposited with the court. Upon return of the show cause order, Gertrude Brown, Lloyd Davis, Stanley Davis, Leon A. Davis, Elvin H. Davis, Myrtle Haines, Viola Townsend, Gladys Billetdoux and Marion Thoburn claimed that each of them has an interest in the land and is entitled to his proportionate share of the proceeds as a result of the condemnation.

George C. Davis died in 1866 seized of the property and by his last will and testament devised his residuary estate, which included this property, to his seven children, of whom Levi Davis was one. Levi Davis died intestate leaving as his only child and heir at law, Robert Jones Davis, who deeded the entire property to Melanie Crammer on October 14, 1903. The latter conveyed the entire property to James Grant, father of the petitioner, William Grant, by deed dated February 6, 1906. William Grant conveyed a part of the property to Charles H. Atkinson, the other petitioner.

The claimant, Gladys Billetdoux, claims through Elisha P. Davis, one of the seven children of George C. Davis. The claimants, Lloyd Davis, Leon A. Davis, Elvin H. Davis and Gertrude Brown claim through their father, George C. Davis (the second), one of two children of Joseph Davis, who was one of the seven children of George C. Davis. The claimant, Marion Thoburn, claims through Raymond Davis, one of eight children of George C. Davis (the second), and the claimants, Myrtle Haines, Viola Townsend and Stanley Davis claim through Harvey Davis, another of the eight children of George C. Davis (the second).

Uncontradicted evidence shows that the petitioners and their predecessors in title have been in continuous, uninterrupted, undisputed and peaceful possession of the entire property from 1903 until 1940, in which latter year the lands were taken by the United States of America as aforesaid. The petitioners contend that such possession of the property for approximately thirty-six years entitles them to claim ownership of the entire property by virtue of adverse possession.

The claimants base their claim to the money deposited by the United States on the theory that, notwithstanding possession by the petitioners and their predecessors as aforesaid, petitioners are cotenants with the other heirs at law of George C. Davis; that the aforesaid possession was for the benefit of all the cotenants and that cotenants cannot be ousted under a claim of adverse possession for the Statute of Limitations would not start to run against them. The claimants argue that Melanie Crammer, James Grant and the petitioners, William Grant and Charles H. Atkinson, knew or should have known that Robert Jones Davis, the grantor in the deed to Melanie Crammer, owned only an undivided interest in the property by reason of the recital in such deed as follows: "And the said George C. Davis by will devised the same to Levi Davis".

The facts in the case of Foulke v. Bond, 41 N.J.L. 527, which is the leading case in New Jersey, are in substance the same facts presented in the instant case. In that case Lott and Earl were tenants in common of a tract of land. Earl died in 1831 and by will devised his undivided interest to his brother, Franklin Earl, who in 1833 conveyed the undivided interest to Ivins. After the death of Ivins, his administrator in 1842 sold and conveyed the land in two parcels, one to Jones and the other to Pharo. In 1851 both Jones and Pharo conveyed the land to the defendant. The undivided interest of Lott was conveyed to the plaintiff by Lott's executors in 1876, whereupon an action of ejectment was commenced in 1877. The verdict of the lower court for the defendant, who claimed title by adverse possession, was affirmed by the Court of Errors and Appeals. In its opinion the court recognized that possession of the joint estate by one tenant in common is presumed to be the possession of all, but ruled that a tenant in common may acquire title to the joint estate in entirety by adverse possession, pointing out that the degree of evi-

dence necessary to prove adverse possession is greater in the case of a tenant in common than in the case of a stranger. The court distinguished between cases in which title by adverse possession is founded on entry which is hostile in its inception and cases in which entry became hostile by subsequent acts, stating that while the latter is presumed to be in accordance with the title of the possessor, the former is a disseizin of the other cotenants. It follows that the degree of evidence necessary to prove adverse possession in the case of entry, hostile in its inception, is much less than that necessary to prove adverse possession in the case of entry which became hostile by subsequent acts. An example of entry, hostile in its inception, is stated by the court to be a conveyance of the whole estate by one of the cotenants which operates as a disseizin of the other cotenants, while a conveyance of an undivided interest would constitute an entry which became hostile by subsequent acts.

In the case at bar the entire estate was conveyed to Melanie Crammer by Robert Jones Davis on October 14, 1903, at which time a disseizin of the other cotenants took place. Since that time petitioners and their predecessors have held the property in uninterrupted, undisputed, continuous and peaceable possession to the exclusion of the other cotenants, or for a period of approximately thirty-six years. The testimony revealed that when James Grant became seized of the entire property on February 6, 1906, he immediately planted and cultivated cranberry vines and created bogs. He lived on the portion of the land which was devoted to farming. He occupied a frame dwelling surrounded by outbuildings. William Grant continued the cultivation and harvesting of cranberries until the portion of the land designated as parcel 111 was sold to Charles H. Atkinson, who further cultivated that portion and planted blueberry bushes. The cultivation of the land continued up to the time the land was condemned. As evidence of the cultivated state of the property, approximately 3,614 blueberry plants from seven to nine years of age, approximately 654 blueberry plants about six years of age, approximately 307 blueberry plants about five years of age, approximately 378 blueberry plants about four years of age, approximately 3,389 blueberry plants about three years of age, approximately 1,393 blueberry plants about

two years of age, approximately 8,558 blueberry plants about one year of age and approximately 9,000 root cuttings were found on the land. The land is situated in a section of the state wherein the growing of cultivated blueberries was originated comparatively recently.

It is difficult to perceive the contention of the claimants that the petitioners and their predecessors knew or should have known of the existence of the other cotenants from an examination of the aforesaid recital in the deed from Robert Jones Davis to Melanie Crammer, which only refers to the devise of the property from George C. Davis to Levi Davis. This recital of itself would not indicate that other cotenants were or are in existence.

The claimants also contend that the consideration of $100 in the deed from Robert Jones Davis to Melanie Crammer and the consideration of $110 in the deed from Melanie Crammer to James Grant is a "fair inference" that only a one-seventh interest was paid for. In addition, from the fact that the deeds starting the chain of title did not contain covenants of seizin, peaceable possession, right to sell and convey, and against incumbrances, the claimants wish us to infer that each subsequent purchaser of the property had knowledge of the defects.

In the case of Foulke v. Bond, supra, however, the court in considering the same problem, said: "It is contended, on the part of the plaintiff, that the defendant had constructive notice of the imperfection in his title, on the principle that a party is legally chargeable with knowledge of the contents of the deeds in his chain of title, and therefore was not a purchaser bona fide But the doctrine of constructive notice does not apply in such a case. There must be proof of actual fraud. Mere neglect to inquire into the state of the title is not sufficient evidence of fraud; nor does the rule that what is sufficient to put a party on inquiry operates as notice, apply in such a case; there must be clear and satisfactory proof of knowledge that the title supposed to be acquired was invalid, accompanied by proof of an intent to defraud the real owner. Clapp v. Bromagham, 9 Cow. [N.Y., 530] 531." pages 542, 543, of 41 N.J.L. The evidence of claimants certainly cannot be considered as "clear and satisfactory proof of knowledge that the title supposed to be acquired was invalid", much less as

*proof of actual fraud.* Of course, the value of the land and its character have been greatly enhanced by the planting of cultivated blueberries to which reference has been made.

The cases submitted by the claimants stand for the proposition that purchasers of property are chargeable with notice of public records and take subject to defects of title arising from deeds and instruments so recorded. The petitioners do not dispute this proposition but claim that notwithstanding defective title they cured the defect by adverse possession. It is interesting to note that the law expounded in Foulke v. Bond, supra, is the law of the great majority of jurisdictions.[1]

The claimants imply that Sections 53 and 54 of the New Jersey Conveyance Act, 46:-21–1, 46:22–1, of the Revised Statutes of New Jersey, 1937, N.J.S.A. dealing with recorded deeds as notice to subsequent purchasers and the failure to record deeds as rendering them void as to all subsequent bona fide purchasers affect the decision of Foulke v. Bond, supra. The interpretation of these sections in Glorieux v. Lighthipe, 88 N.J.L. 199, 96 A. 94, Ann.Cas. 1917E, 484, dispels this implication. The court in that case said: "There was no express statutory provision making the record notice until 1883, and, if that act did in fact broaden the scope of the notice (as to which we express no opinion), it was repealed in 1898. In that year the Legislature, in enacting section 53, limited the notice to the same class of persons to whom it had been limited by construction prior to 1883". Page 203 of 88 N.J.L., page 95 of 96 A., Ann.Cas.1917E, 484. Therefore, the law as to notice to be applied to purchasers of property which existed at the time Foulke v. Bond, supra, was decided, was put into the form of a statute and was the same law that was in effect in 1903, the year of the conveyance from Robert Jones Davis to Melanie Crammer.

█ The petitioners' rights are further aided by statutes in force in the State of New Jersey with reference to actual un-

interruptedly continued possession of real estate. These statutes read as follows:

"Thirty years' possession of real estate, except woodlands or uncultivated tracts, and sixty years' possession of woodlands or uncultivated tracts however commenced or continued.

"Thirty years' actual possession of any real estate excepting woodlands or uncultivated tracts, and sixty years' actual possession of woodlands or uncultivated tracts, uninterruptedly continued by occupancy, descent, conveyance or otherwise, shall, in whatever way or manner such possession might have commenced or have been continued, vest a full and complete right and title in every actual possessor or occupier of such real estate, woodlands or uncultivated tracts, and shall be a good and sufficient bar to all claims that may be made or actions commenced by any person whatsoever for the recovery of any such real estate, woodlands or uncultivated tracts." Rev.Stat.N.J. (1937) § 2:25–1, N.J.S.A.

"Thirty years' actual possession of any real estate under claim or color of title.

"Thirty years' actual possession of any real estate, uninterruptedly continued by occupancy, descent, conveyance or otherwise, wherever such possession commenced or is founded upon a proprietary right duly laid thereon, and recorded in the office of the surveyor general of the division in which the location was made, or in the office of the secretary of state, pursuant to law, or wherever such possession was obtained by a fair bona fide purchase of such real estate from any person in possession thereof and supposed to have a legal right and title thereto, or from the agent of such person, shall be a good and sufficient bar to all prior locations, rights, titles, conveyances, or claims whatever, not followed by actual possession as aforesaid, and shall vest an absolute right and title in the actual possessor and occupier of all such real estate." Rev.Stat.N.J. (1937) § 2:25–2, N.J.S.A.

These sections were interpreted in Content v. Dalton, 121 N.J.Eq. 391, 190 A. 328, affirmed 122 N.J.Eq. 425, 194 A. 286, 112

---

[1] "Although there are some authorities to the contrary, the general rule is that, where title is claimed by plaintiff in good faith, accompanied by actual and adverse possession of the property for the period prescribed by the statute of limitations, no more is required to support the action, even though such action is against the holder of the paper title barred, who has

not used his title to disturb plaintiff." 51 C.J. § 75(b). A footnote to this statement places New Jersey among those states which follow the general rule. The case of Ocean Beach Assoc. v. Yard, 48 N.J.Eq. 72, 20 A. 763, which follows Foulke v. Bond, supra, is cited, among others.

A.L.R. 1031, to mean that the possession must be adverse in character. Possession of the property in question in the instant case was held adversely by petitioners and their predecessors for a period of approximately thirty-six years.

The petitioners are the owners of the property and entitled to the money deposited by the United States.